## Blair v. Commonwealth.

(Decided Dec. 16, 1932.)

JOS. M. HAYSE and T. B. ROBERTS for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Affirming.

Appellant was convicted of the offense of chicken stealing, and sentenced to serve five years in the penitentiary. This appeal results.

Although many grounds for a new trial were set up in the motion made for the purpose of obtaining such new trial, and although this motion is copied at length in the brief of attorney for appellant, yet the only grounds for reversal argued in that brief are that appellant was entitled to a peremptory instruction because there was no evidence of his guilt, and, if this be not so, that he is entitled to a reversal because the verdict is flagrantly against the evidence. This being true, all other grounds are deemed waived. Helton v. Commonwealth, 245 Ky. 7, 53 S. W. (2d) 189.

For the commonwealth, it was shown that on the night of October 2, 1931, 85 chickens, mostly Buff-

Rocks, and 1 turkey were stolen from the farm of Mrs. E. T. Tucker in Shelby county, Ky. It so happened that Mrs. Tucker's son, William, and his wife, who lived with her, had gone to Louisville that evening to attend the theater. They returned home about 1 o'clock in the morning. As they neared home, they passed a Ford truck with a yellow body, black fenders, and hood. The name John Hurtstein was painted on the side of the truck, and it carried a Kentucky truck license, No. 56—720. These details were noticed by Tucker as he slowly passed the truck. He saw no one around or in the truck. The next morning, when the chickens were missed from the brooder house where they had been put up the night before, an investigation was made about the premises, and tracks of five men were seen leading from the brooder house across a freshly plowed field to a fence which had been cut and through which those who had made the tracks had passed to the road which the fence skirted. This place in the fence was not far from the spot where Tucker had seen the Ford truck parked the night before. At the place where the fence was cut were found some chicken feathers, a sack, and some string. The theft was reported to the Louisville police, together with a description of the Ford truck above mentioned. It was later found at the home of the appellant's father-in-law on Cable street in Louisville. Witnesses were produced who testified that, on the morning after these chickens were stolen from Mrs. Tucker's farm, this truck was seen in the side yard of the home of appellant's father-in-law loaded with three coops full of yellow chickens, and with a sack in which was a turkey with its head sticking through a hole in it.

The police determined to arrest appellant and his brother, and they waited at the home of the father-in-law for that purpose. Along in the afternoon appellant and his brother, in a Ford sedan, passed the police. When they saw the police, they speeded up and disappeared down the street. Later the police found them at the home of appellant's father-in-law, and arrested appellant's brother, but appellant made his escape. He was later found at the home of his sister in the cellar behind a lot of rubbish. The turkey and the chickens were never located after the witnesses saw them on the truck, for later that morning they disappeared from the coops in which they had been placed and were not seen again. It was also shown that this

Ford truck had been in operation the afternoon prior to the night during which Mrs. Tucker's chickens were stolen. Appellant through witnesses, for he did not testify himself, claimed that the yellow truck in question was in such condition at the time of the theft of Mrs. Tucker's chickens as that it could not run; that on the day before this theft he had attempted to haul some furniture from his sister's place to his father-in-law's place, and had to be towed over; that whatever chickens and turkey were seen on his truck had been brought by him from his mother's place in Breckinridge county to his sisters in Louisville who ran boarding houses there. While it was admitted that he was found in the cellar by the police when they arrested him, it was claimed that he was down there sorting potatoes at the time and not hiding. From this resume of the evidence, it is too plain to require discussion that this was a case for the jury, and, if it believed the commonwealth's testimony, it was amply justified in finding the appellant guilty.

Judgment affirmed.